UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

BARRY PAXTON                                                                                          PLAINTIFF
ADC #660117

V.                                            No. 5:18CV00032-JLH-JTR

MICHELLE GRAY,
Assistant Warden, Ester Unit.                                                              DEFENDANT

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Barry Paxton ("Paxton") filed this *pro se* § 1983 action alleging that, while he was a prisoner at the Ester Unit of the Arkansas Department of Correction

("ADC"),[1] Defendant Assistant Warden Michelle Gray threatened to transfer him in retaliation for exercising his constitutional rights, and then followed through on that threat by having him transferred to the RLW Unit. *Docs. 2 & 7*.[2]

Defendant has filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Material Facts, arguing that Paxton's claims should be dismissed because he failed to exhaust the administrative remedies available to him at the ADC. *Docs. 20, 21 & 22*. Although notified of his right to file a Response, Paxton did not respond, and the time for doing so has passed.[3] Thus, the issues are joined and ready for disposition.[4]

---

[1]On October 29, 2018, Paxton notified the Court that he had been paroled from the ADC, and he provided a change of address. *Doc. 24*. The Court ordered him to file a free-world application to proceed *in forma pauperis*. *Doc. 25*. He did not do so, and the deadline for responding has passed.

[2]On July 10, 2018, the Court dismissed: (1) Paxton's official-capacity claim against Defendant Gray; (2) his retaliatory discipline and access-to-the-court claims against Defendant Gray; and (3) all claims against Defendants T. Rouse, Ms. Harris, the two John Doe Defendants, and Angela West. *Docs. 10 & 13*. Thus, Paxton's retaliatory transfer claim against Defendant Gray, in her individual capacity, is the only remaining claim in the case.

[3]Paxton's Response was initially due on November 16, 2018. *Doc. 23*. After his release from the ADC, the Court granted his request to extend the deadline, making his Response due on December 17, 2018. *Doc. 25*.

[4]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c);

## II. Discussion

### A. ADC Procedures Governing the Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006).

The PLRA requires inmates to: (1) *fully and properly* exhaust their administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-

---

*Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

3

42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver "within 15 days after the occurrence of the incident"; (2) a "Step Two" formal unit-level grievance raising that claim; and (3) an appeal to the appropriate Deputy Director. ADC Adm. Dir. 14-16 § IV(E) through (G) ("AD 14-16").[5] To properly complete an appeal to the Deputy Director, the ADC grievance policy requires an inmate to "include the original Unit Level Grievance Form (Attachment I), which describes the matter originally grieved, and … the Acknowledgment or Rejection of Unit Level Grievance (Attachment II) if the inmate is asserting the grievance was improperly rejected." AD 14-16 § IV(G)(2) ("If these

---

[5]Gray submitted a copy of AD 14-16 with her summary judgment papers. *Doc. 22, Ex. A.*

… pages are not submitted with the inmate's appeal portion completed, the appeal may be returned to the inmate as rejected.").

**B.     Analysis**

Paxton did not respond to Defendant's Motion for Summary Judgment or otherwise contest any of the facts set forth in Defendant's Statement of Undisputed Material Facts (*Doc. 22*). Accordingly, all of those facts, which form the basis for her Motion for Summary of Judgment, are now deemed to be admitted. *See* Local Rule 56.1(c); *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 579 (8th Cir. 2006) (holding that grant of summary judgment motion was proper where non-moving party had not filed response to motion, district court had under local rules deemed as admitted facts set forth in summary judgment motion, and summary judgment was appropriate based on uncontroverted facts set forth in motion).

In his Complaint and Amended Complaint, Paxton alleges that, while he was at the ADC's Ester Unit, Defendant violated his constitutional rights by: (1) verbally threatening to "write [him] up and ship [him]" for writing grievances and contacting the Department of Veterans Affairs about "matters and problems" at the Ester Unit; and (2) following through on that threat by having him transferred to the RLW Unit. *Doc. 2 at 3-4; Doc. 7 at 2*. It appears that Paxton was transferred to the RLW Unit in October or November 2017.

Paxton filed only one grievance that is relevant to the claims he is asserting against Defendant: ESU-18-00013. *Doc. 22 ¶¶ 17-19; see Doc. 22, Ex. B ¶¶ 6-8* (Brown Decl.) & *Ex. C*.[6] Paxton initiated this grievance on January 7, 2018, *after his transfer to the RLW Unit*, by filing a Step One informal resolution which stated the following:

> *While I was at Ester Unit* I was verbally threaten by Warden Gray on two occasions. She told me "to have patience" and how dare I use her name in letters to the Director and Gov office. Then told me that anything else that I was getting wrote up and ship. (This was said numerous times.) Also there was no forms or legal materials in the library even though this is the veterans [barracks]. Also the legal mail of veterans was always getting open before it was handed out. This occurred on 17 Oct [20]17, 13 Oct [20]17, [and] 4 Oct [20]17. By not having materials for veterans and not allowing veterans to help one another is a clear violation of the constitutional rights and thus a denial access to courts.

*Doc. 22, Ex. C at 4* (emphasis added). On January 21, 2018, a non-party officer responded: "This was more than 3 months ago. For an informal resolution you have only 15 days after the incident to file." *Id.* It was also noted "Not at this unit." The responding officer did *not* address the merits of Paxton's Step One informal resolution.

Because Paxton was complaining about incidents at the Ester Unit, the

---

[6]In support of her position that Paxton failed to exhaust his administrative remedies, Gray submitted: (1) a declaration from Terri Grigsby Brown, the ADC's Inmate Grievance Supervisor; and (2) copies of the relevant grievance documents. *Doc. 22, Exs. B & C.*

grievance was apparently forwarded to that unit for processing as a "Step Two" formal unit-level grievance, per ADC policy. *See* AD 14-16 § IV(E)(13) (procedures to be followed when an inmate is transferred from the unit where the incident or issue arose). On January 24, 2018, Paxton's Step Two grievance was received at the Ester Unit and designated as ESU-18-00013. *Doc. 22, Ex. C at 2*. The same day, a non-party grievance officer rejected the grievance as untimely. *Id. at 2 & 5*. As a result, the grievance officer did *not* address the merits of Paxton's claims raised in his Step Two grievance.

On February 2, 2018, Paxton appealed the rejection of his grievance to Chief Deputy Director Marshall Dale Reed. *Id. at 5*. On February 8, 2018, Reed denied Paxton's appeal on procedural grounds because he had failed to include the "Unit Level Grievance Form (Attachment I)" in his appeal papers. *Id. at 2-3 & 6*. As a result, Reed did *not* address the merits of Paxton's claims raised in his grievance appeal.

Defendant argues that, because Paxton's informal resolution, formal grievance and appeal were all rejected on procedural grounds, without addressing the merits of Paxton's complaints, ESU-18-00013 was not fully and properly exhausted. The Court agrees.

The PLRA requires "proper" exhaustion, which means "using all steps that

7

the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The ADC grievance policy clearly instructs prisoners to initiate the grievance process within fifteen days of the incident, and it clearly instructs prisoners to include the original Unit Level Grievance Form with an appeal from the Step Two decision.[7] Paxton does not dispute that he failed to comply with these two procedural requirements.

In his pleadings, Paxton contends that, because his grievance was "rejected" at all levels, the exhaustion requirement was satisfied. *Doc. 8 at 3*. This is an incorrect statement of the law. As previously explained, the PLRA requires "proper" exhaustion. Paxton also alleges that he made "reasonable" attempts to comply, citing cases for the proposition that a prison grievance is "deemed exhausted" when prison officials fail to respond or give misleading or incorrect advice about the grievance process. *Id. at 3-4 & 10.* However, nothing in the record suggests that ADC officials

---

[7]*See* AD 14-16 § IV(E)(1) (requiring that a Step One informal resolution "be completed and submitted within 15 days after the occurrence of the incident") & § IV(G)(2) (requiring that the inmate "include the original Unit Level Grievance Form (Attachment I)" in his appeal to the Deputy Director).

failed to respond or otherwise thwarted Paxton's attempts to exhaust his claims against Defendant about the allegedly retaliatory threats and transfer.[8] Accordingly, these cases are inapplicable.

Because Paxton did *not* properly exhaust his available administrative remedies regarding the retaliatory transfer claim he is now asserting against Defendant, the Court concludes that she is entitled to summary judgment. Accordingly, Paxton's § 1983 claims against Defendant should be dismissed, without prejudice, for failure to exhaust administrative remedies. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought to court.").

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendant Michelle Gray's Motion for Summary Judgment (*Doc. 20*) be GRANTED and that Paxton's claims against her be DISMISSED, without prejudice, for failure to exhaust, thereby

---

[8] In *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016), the Court clarified that the PLRA's exhaustion requirement contains no "judge-made" exceptions, such as good cause. Instead, a prisoner must properly exhaust all "available" remedies, which the Court narrowly defined as all remedies that are "capable of use." *Id.* at 1858. The Court emphasized that administrative remedies are "unavailable" only under three limited circumstances which "will not often arise": (1) when the process cannot be completed because it is a "dead end," with prison officials "unable or consistently unwilling" to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when prison officials thwart the inmate through "machination, misrepresentation, or intimidation." *Id.* at 1859-60. None of these exceptions apply here.

dismissing this case in its entirety.

DATED this 3rd day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE